CITY OF ROCHESTER, Plaintiff, *v.* PAUL S. ALLING, Defendant.

City Court of Rochester, Criminal Branch, March 8, 1939.

*Daniel J. O'Mara, District Attorney* [*Thomas P. Culhane, Assistant District Attorney,* of counsel], for the plaintiff.

*Paul S. Alling,* in person.

GITELMAN, J.  The defendant has pleaded guilty to the charge of operating an automobile owned by him at a speed greater than legally permitted by the city ordinance.  The penalty that may be imposed by the court for this offense is a fine not exceeding $150 or by imprisonment not exceeding 150 days or by both such fine or imprisonment.

The prevention of accidents is the basic purpose of this ordinance. In fact, most of the laws and rules regulating traffic were drawn with only this object in view, namely, the prevention of accidents. Experience has shown that rare indeed is the accident involving two automobiles in which at least one of the drivers did not violate some traffic law or regulation.  So much so is this a fact that it has become a truism that a maximum enforcement of traffic laws

results in a minimum of accidents. While the responsibility of enforcement rests upon the police, courts have the duty of supplementing that enforcement so that not only will a minimum of accidents be achieved, but· also that their ill effects may be alleviated. As an illustration of this function, we call attention to the time-honored power of the court of ordering restitution which is invoked to make good the loss suffered by an injured party.

In our opinion, it seems fair to assume that those who violate traffic laws are more apt to have accidents than those motorists who do not. The least that we should expect of those who show by their own actions that they are more apt to have accidents is that they are in a position to pay for whatever damages they may cause. An automobile public liability policy offers such assurance. The effect of such a policy is to make sure that restitution is made to an injured person who himself is free from negligence. It provides the means before the damage is done instead of waiting until after the happening of the event.

This court has already indicated that it would impose a fine and suspend the execution thereof on condition that defendant file a public liability policy for one year with the clerk of the court and keep it in force for that period. The defendant has indicated his acceptance of the condition, but before imposing the sentence the court desires to discuss a recent decision of the County Court in the case of *City of Rochester* v. *Newton* (169 Misc. 726).

In order to determine the law as expounded in any decision the facts in the case must first be examined. It is elementary that an interpretation of the law can only be made as it relates to those facts. In the *Newton* case the defendant was operating his father's car. The appellate court held that although the defendant was speeding at about sixty miles per hour, under all the circumstances in that case any fine larger than ten dollars was excessive, and accordingly reduced the fine of sixty dollars imposed by this court. This court had offered to suspend part of that fine on condition that a public liability policy be filed by the defendant. He refused to accept that condition and, consequently, the court did not impose the condition nor did it suspend any part of the fine. The appellate court held that although it was a family car, the condition was unreasonable inasmuch as the defendant had no insurable interest in it and that legally the situation was no different than if the car had been owned by a total stranger. It held further that if the condition had been accepted, the resulting suspension of a part of the sentence would be illegal under section 2188 of the Penal Law. This section specifically permits a sentence or its execution to be

suspended, but an amendment to it had omitted the words " in whole or in part " previously therein. Taking into consideration the previous wording, the court ruled that the execution of a sentence can only be suspended in its entirety. It held that an illegal condition which would result in an illegal sentence although not accepted by the defendant invalidated such sentence.

However, this court had indicated in that case that it would suspend the execution of the entire sentence on condition that the defendant leave his operator's license with the court for sixty days and that he would not drive a car for that period. The defendant refused to accept that condition and, consequently, that condition was not imposed and neither was the fine suspended. The appellate court did not discuss whether this condition was reasonable or otherwise. It interpreted the entire sentence of this court as being in the alternative and not definite and certain and, therefore, bad.

In fact, the sentence was definite and certain. It imposed a fine of sixty dollars. The defendant was not left in any doubt about it. He paid that sum to the clerk of the court immediately. Had he not paid it, his commitment to the penitentiary would have been just as definite. The appellate court cited cases to the effect that a sentence must be definite and certain. So it must. But each case cited by the court in support of its decision dealt with indefinite commitments and sentences. We had no such indefiniteness or uncertainty in the *Newton* case. What we did have was an offer to suspend the sentence on conditions that were unacceptable to the defendant. Inasmuch as the conditions were not accepted, none was imposed. The sentence pronounced was the imposition of a fine. It consisted of that and nothing more.

The power of courts to impose conditions when suspending sentence has long been recognized. The Appellate Division of the Supreme Court in the case of *People ex rel. Pasco* v. *Trombly* (173 App. Div. 497) held that the court was not obliged to suspend sentence — doing so was the granting of a favor — which it was not obliged to do, saying specifically " the court had a right to impose any lawful condition to its grant of a favor, and it did not abrogate its powers because it became necessary subsequently to have evidence that the relator had failed to perform this condition." This power is taken for granted to such an extent that when it was questioned in the case of *People* v. *Betar* (211 App. Div. 829), and later affirmed by the Court of Appeals (240 N. Y. 560), neither court saw fit to write an opinion. If the imposition of the condition is legal, certainly an offer to impose the same condition cannot be less legal.

While the decision in the *Newton* case is not controlling in the case at bar because the defendant in that case was driving his father's car and the defendant before the court now was driving his own, the appellate court indicated that even if the defendant had been the owner of the car, the condition would have been unreasonable inasmuch as the Legislature has not as yet enacted a law compelling automobile owners to carry liability insurance and further that such a condition would work an injustice on motorists who cannot afford to pay for insurance as contrasted with those who can. Although a decision of an appellate court is controlling only to the extent of the actual facts involved and an expression as to the law based on other facts is regarded as " dicta " and not controlling on lower courts, such " dicta " deserves serious consideration.

We are of the opinion that it is the public policy of the People of the State of New York and of its Legislature that automobile owners be encouraged to carry public liability insurance and that the larger the number who do carry such insurance, the greater the public benefit. While there is no law compelling all motorists to carry insurance, the Legislature is constantly enlarging the classes of those who must. Only last year by section 63-r of the Public Service Law (added by Laws of 1938, chap. 543), it became mandatory, with but few exceptions, that those who operate trucks as carriers for hire have public liability insurance after January 1, 1939. For almost ten years we have had the so-called Automobile Financial Responsibility Law (Vehicle and Traffic Law, art. 6–A). Section 94-a of that article provides that whenever a person is guilty of any of several traffic offenses (speeding, among them), where an injury to a person or property actually results therefrom, his operator's license and registration certificate shall be suspended until such time as a liability policy or its equivalent be filed. Section 94-b provides that this same procedure must be followed whenever a final judgment in excess of $100 is rendered against a person in an automobile negligence action, and it remains unpaid after fifteen days. The condition imposed by this court in order to obtain a suspended sentence is in reality but an extension of the principle underlying the Automobile Financial Responsibility Law. While that law becomes operative only after the injury occurs or the judgment rendered, the procedure adopted by this court protects the public before the accident happens. The fact that a negligent motorist is deprived of his license and will not be permitted to drive unless he shows financial responsibility for future accidents is of little comfort to one who has already suffered injuries and damages. To us who are in the courts and in the legal profession

generally, it is a matter of common knowledge that in the city of Rochester alone there are actually thousands who have not been compensated for their injuries and damages, who would have been had the negligent motorists involved carried liability insurance. Can the imposition of a condition that literally locks the barn *before* the horse is stolen be termed an unreasonable one? We are firmly convinced it is most reasonable.

As already mentioned, the appellate court was of the opinion that this condition would be unreasonable because it would work an injustice on those motorists who could not afford to meet this condition as contrasted with those who could. Courts cannot neutralize the inequalities that life itself has placed on individuals. To attempt to do so when a fine is imposed would necessitate a complete investigation of the finances of each defendant and if a relatively proportionate fine would be imposed, it would mean that one defendant would have to pay a thousand dollars and another only five dollars. Even on that basis, the five dollars might mean more to the poor man than the large amount to the rich man. In the latter case, it would merely be an item of bookkeeping, while to the former it might mean a pair of shoes. Equality before the law is a principle too deeply rooted in our system to permit such a procedure.

Let us remember that we are dealing with only those motorists who by their own actions have brought themselves into the court for discipline. They have been guilty of offenses which frequently cause accidents. In simple fairness, the public is entitled to protection from them and needs that protection just as much from one who drives an antiquated relic that is being sought for purposes of exhibition by the Smithsonian Institute as by one who can afford to drive a streamlined car of tomorrow. The condition that is being imposed in this case and will be imposed in similar cases in order to obtain a suspension of the sentence is that a policy for a full year be filed. A motorist who already carries insurance who desires to meet this condition will have to cancel his old policy and get a new one. We venture to suggest that the embarrassment of doing so will outweigh the ability to pay and prove an adequate deterrent for any further offenses. Traffic offenses can only be decreased if there is a deterrent that applies equally to all. We believe that the procedure adopted by this court not only supplies such a deterrent to all motorists in general, but at the same time protects the public from the consequences of such offenses.

For the reasons stated, the court imposes a fine of fifty dollars and suspends the execution thereof on condition that an automobile public liability policy known as a $5,000 and $10,000 policy for a

period of one year from March 2, 1939, be filed with the clerk of the court, and if for any reason at all this policy is canceled within the time within which the court may revoke the suspension, it will do so and the fine will have to be paid into the court.

It is further ordered that in all similar cases where this court follows the same procedure, this opinion be referred to and made a part thereof as though fully set forth therein.